SOCONY–VACUUM OIL CO., Inc.
v. ADERHOLD.

No. 12151.

Court of Civil Appeals of Texas.
Galveston.

May 4, 1950.

Rehearing Denied June 1, 1950.

Royston & Rayzor, of Houston, attorneys, Robert Eikel, of Houston, of counsel, for appellant.

Mandell & Wright, of Houston, attorneys, Arthur Mandell, of Houston, of counsel, for appellee.

GRAVES, Justice.

This appeal is from a $40,203-judgment, in favor of the appellee against appellant, of the 61st District Court of Harris County, entered in part upon a jury's answers to special issues and in part from independent findings of the court itself, recited to have been "from the undisputed evidence"; $35,807 of such total being for damages, under Section 688, Title 46 U.S.C.A., Jones Act, suffered by the appellee as a result of injuries sustained by him while a member of the crew of appellant's SS "Sacona", and the remaining $4,396 for 1098 days, as "maintenance and cure", enuring to him as a further consequence of such injuries under the general Admiralty Law. In other words, the judgment so arrived at matured in appellee's favor two separate and distinct causes-of-action declared upon below by the appellee as having enured to him from having sustained a fall from the shelf in the shelter-deck of such steamship, while he was an ordinary seaman working thereon, on or about October 4th of 1946.

The latter only of the two justiciable questions-of-law affecting the rights of such seamen presented here is novel to this court, the first one having been before it in Maldonado v. Lykes Bros. Steamship Co., Inc., Tex.Civ.App., 142 S.W.2d 544, dism. judgm. cor.

This court in that cause, at page 546, of 142 S.W.2d, thus in substance construed such a seaman's right to recover damages for injuries under the Jones Act:

"This being, as indicated, not the usual and ordinary case of the servant against the master for the consequences of actionable negligence in the common employments of every-day life, to which no special rules apply, but one controlled by the special relation of seaman and steamship master, as governed by the Federal 'Jones Act', supra, it is obviously amenable to the rules inhering in and enjoined by that statute, rather than those appertaining to a master-and-servant relationship in general.

"Under that statute, it seems settled that such a seaman as appellant was may recover for injuries received in the course of his employment resulting from the shipowner's negligent failure to furnish reasonable, safe, suitable, or proper appliances, or equipment. (Citing cases.)

"Further, under the requirements of that Act, it being amendatory of the pre-existing Federal Admiralty Law, the common law rules do not apply to such relationship of ship-owner and seaman, among other things, in that the seamen are bound to use the equipment or appliances which the owners furnish for them to do the particular work with, and, in turn, the owners are, for their part, bound to furnish and maintain equipment and appliances reasonably free from defects, as well as reasonably proper and suitable for the special kind of work being done; in this respect, such employers of seamen, while not insurers of the latter's safety, are bound by the requirements of the Act to a much higher degree of care than is required of employers of mere shore-servants; * * *." (Citing authorities.)

■ As to the second element of recovery, that is, the seaman's right to further recover for "maintenance and cure", the law is well settled in his favor, if such injuries resulted in disability. McInnis v. United States, 9 Cir., 152 F.2d 387; Aguilar v. Standard Oil Co. of New Jersey, 318 U.S. 724, 63 S.Ct. 930, 87 L.Ed. 1107; The City of Avalon, 9 Cir., 156 F.2d 500; Lewis v. American-Hawaiian S. S. Co., D. C., 49 F. Supp. 127; The Rolph, 9 Cir., 299 F. 52; Socony-Vacuum Oil Co. v. Smith, 305 U.S. 424, 59 S.Ct. 262, 266, 83 L.Ed. 265.

In this instance the trial court, pursuant to such two separate declarations of his causes-of-action, and its own construction of the law affecting them, literally cross-examined the jury on all material features of the controversy in some 38 detailed special-issues of fact, all of which were answered by the jury in favor of the appellee; whereupon, the appealed-from judgment was so entered.

In protest against such judgment, appellant presents here some nine points-of-error, in which it criticizes both the form and substance of the controlling issues so submitted to the jury, contending, among other things, (1) that its duty under the law—as such employer—was not to furnish its employee a safe place to work, but only a "reasonably" safe place; (2) that the trial court's detailed issues were duplicitous and unduly emphasized appellee's theory of the case; (3) that the undisputed evidence showed that painting, which was the work the appellee was engaged in at the time of his claimed fall, while the ship was at sea and rolling, was merely routine, normal work, and there was no evidence that it was negligence to so paint while the ship was at sea; (4) that the trial court's issue No. 9, on its face, assumed—against the evidence—that appellant had knowledge of the existence of the grease on the shelf, on which appellee testified he fell; (5) that special-issues 9 and 10, as submitted, each amounted to a general charge, and were on the weight of the evidence; (6) that there was no evidence that what were termed "fittings", or "reducers", (being small steel appliances) on such shelf caused the appellee's fall, which he alleged they did, hence the group of special-issues submitted thereon were improper, because the appellee testified that such fittings did not cause him to fall, but, instead, that he slipped and fell upon some "grease on such shelf"; hence, (7) that all other issues submitted in that connection were immaterial, and erroneous; (8) that the court's issue No. 17, inquiring whether appellant's failure "to rig up a staging" upon which the appellee could have sat, or stood, in order to paint the overhead on the inside of the shelter-deck of the ship was negligence, was improperly submitted and against the evidence, since appellee claimed that he fell by slipping "on the grease under his feet" only; (9) there was no evidence that the sums allowed the appellee for "maintenance and cure" were reasonable; (10) that there was, further, no fact-finding of the number of days the appellee was entitled to such maintenance, nor were there any findings-of-fact nor evidence as to when the appellee had been employed after his claimed injury, hence the trial court's calculations and findings as to such maintenance were without support in the evidence; further, (11), since the pleadings seeking a sum for maintenance did not declare for more than $2,500 on that account, the excess sum so allowed therefore had no support; finally, (12), since appellee alleged "Plaintiff * * * was engaged in

painting * * * when the ship rolled and his foot slipped on said fittings, causing him to lose his balance and fall", and since he testified emphatically that he did not stand upon the fittings, but slipped on a "gob of grease" on the shelf beneath the canvas he was standing on, the court erred "in refusing to enter judgment for defendant non obstante veredicto upon plaintiff's suit for damages under the Jones Act."

None of appellant's presentments, it is determined from the record as a whole, should be sustained. Indeed, when the principles declared in the Jones Act, and in the General Admiralty Law, cited and quoted from above, are applied to the record in this cause, it seems plain that, as the trial court found and held, the appellee made out a case under each of the statutes he so grounded his suit upon.

Furthermore, this court finds no insufficiency of evidence to support any of the jury's findings, nor has the appellant adduced any concrete testimony contradictory of the trial court's supplemental findings—especially with reference to the supporting proof presented by the appellee in substantiation of his alleged claims for maintenance.

Indeed, perhaps the controlling question-of-fact the court submitted, was whether it was negligence, while the vessel was on the high seas and rolling, to send appellee to paint in the crouched, cramped position he had to assume in the narrow space between the shelf and the overhead, with nothing to hold on to, as was clearly inquired about in the court's No. 6 issue to the jury.

Not only so, but as so drawn, that inquiry was properly based upon the appellee's pleading on that feature.

█ Wherefore, the jury's finding, on evidence this court deems amply sufficient,

settles that question in favor of the appellee.

█ ▪ The findings, the pleadings, and the evidence in this case—bindingly upon this court—show that the appellee was ordered to work on the elevated shelf above the deck of a ship, which was at that time on the high seas and rolling and pitching; that there was grease on the floor of the shelf upon which he had to do that work, with some testimony to the effect that its officers knew it was there; further, that the presence of such grease was undoubtedly dangerous, hence, under the high duty of care required of the employer under the Jones Act, Koehler v. Presque-Isle Transfer Co., 2 Cir., 141 F.2d 490, the jury's verdict consequently upon that question cannot be re-examined on appeal; see Cervo v. Isbrandtsen Co., Inc., 2 Cir., 178 F.2d 919.

█ Conclusive, also, as already indicated under the citation of authorities, were the jury's findings that $4 per day was a reasonable allowance for food and lodging for the appellee during his period of disability; hence, such recovery, the right to which has many times been held to have been one arising out of the contract between the ship's master and the seaman, is supported by an unbroken line of cases, among which are these: The Osceola, 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760; Cortes v. Baltimore Insular Line, Inc., 287 U.S. 367, 53 S.Ct. 173, 77 L.Ed. 368; Loverich v. Warner Co., 3 Cir., 118 F.2d 690; Title 46, U.S.C.A. pages 211 through 269; Jones v. Waterman Steamship Corp., 3 Cir., 155 F.2d 992, 1946 A.M.C. 859; Id., 3 Cir., 130 F.2d 797; Rich v. North Atlantic & Gulf S. S. Co., D.C., 86 F.Supp. 989–991; and Benedict on Admiralty, 6th Ed., Sec. 83, page 253.

These conclusions require an affirmance of the judgment. It will be so ordered.

Affirmed.