**BICKART v. UNION BARGE LINE CORP.**
No. 119.

United States District Court
W. D. Pennsylvania.
March 18, 1953.

Hymen Schlesinger, Pittsburgh, Pa., for libellant.

John R. Bredin, of Dalzell, Pringle, Bredin & Martin, Pittsburgh, Pa., for respondent.

MARSH, District Judge.

This admiralty action was brought by the libellant to recover maintenance and cure. From the evidence, the court enters the following

## Findings of Fact

1. Arthur Bickart, the libellant, is a resident and citizen of Pittsburgh, Allegheny County, Pennsylvania.

2. Union Barge Line Corporation, respondent, is a Pennsylvania corporation and has its principal office for the transaction of business in Pittsburgh, Allegheny County, Pennsylvania.

3. On October 2, 1945, the respondent owned and operated the steamboat J. D. Ayers in navigation on the Mississippi River in the vicinity of Rosedale, Mississippi.

4. The libellant on said date was employed by the respondent on said vessel as a deckhand.

5. On said date, while assisting in the operation of moving a fuel flat or barge from the starboard side to the head end of the boat, the libellant received injuries to his right leg when it was caught between the corner of the fuel flat and a tow knee.

6. Because of this injury libellant was hospitalized in the United States Marine Hospital at Memphis, Tennessee, from October 2, 1945, to January 31, 1946. During this period maintenance and medical services were furnished to the libellant free of charge.

7. From February 2, 1946, until approximately June 1, 1946, libellant was an outpatient at the Marine Hospital in Pittsburgh, Pennsylvania. These medical services were furnished libellant free of charge. During this period he walked on crutches and used a cane.

8. Since undergoing treatment in the Marine Hospitals, libellant has suffered pain and some limitation of motion in his right hip. He also has suffered a moderate amount of swelling, rigidity and spasticity of the muscles of the right hip. This condition is due to a secondary reaction resulting from the injury and the insertion of a metal plate in the bony structure of the broken hip, and is induced by standing and walking while at work. This condition is permanent. There is also a moderate amount of spasticity and rigidity in the muscles in plaintiff's right knee, which is a result of the injury.

9. Libellant alleviates the pain, muscular rigidity and spasticity of his leg by massage and heat applications. Further medical treatment would not do any more for him insofar as improving his condition is concerned.

10. Libellant started to look for work during the month of September, 1946.[1] By September 18, 1946, libellant had attained the maximum degree of improvement that could be expected from the medical treatment and care which he received. This period from October 2, 1945, to September 18, 1946, is a fair and reasonable period after this injury in which to expect the maximum improvement. Under the evidence further medical treatment and care will not further cure him.

1. See plaintiff's testimony at pages 61-62 in Civil Action No. 6222. In the present action, plaintiff offered in evidence his testimony in Civil Action No. 6222 in relation to certain checks. From this testimony it appears he signed a release for the money represented by those checks on September 18, 1946.

11. No curative medical treatment has been sought by libellant since he was an outpatient at the Marine Hospital at Pittsburgh.

12. Libellant obtained employment and worked for North Laundry Company for two months from March 20, 1947; he was employed for three months by Sweet Clean Laundry Company from November 1, 1947, until January 31, 1948; for approximately six months by the Davey Tree Expert Company from October 18, 1950, until April 10, 1951; and since April 10, 1951, to the time of this trial for Paulus, Inc. as a rubber molder.

13. Because the foregoing employment requires him to stand and walk, libellant suffered pain, swelling, rigidity and spasticity of his right leg between the knee and hip. In his living quarters he massaged and applied heat to the leg to relieve this condition. This discomfort, at least partially, was the cause of his quitting his jobs at the first three companies above mentioned.

14. There was no proof that the massage and heat applications, self-administered, were curative treatments.

15. As a result of the injury, libellant suffered loss of earning capacity, a permanent partial disability, and pain, suffering and inconvenience for which damages in the sum of $16,400 were awarded by a jury at Civil Action No. 6222 on June 11, 1947.[2]

16. During the month of September, 1945, when libellant began to work for respondent, libellant was paid $4.47 per day plus board and lodging at the rate of $1 per day, making a total of $5.47 per day. Social security was computed on the wage rate of $5.47 per day. He earned a total of $161.37 and that sum included meals and lodging at the rate aforesaid.

17. The earnings of libellant for the month of September, 1945, in the sum of $161.37, were admitted in evidence at the jury trial at Civil Action No. 6222 as evidence of his earning capacity prior to the accident and were considered by the jury in determining the question of past and future loss of earning power.

18. Maintenance at the rate of $1 per day for an indeterminable period[3] had a bearing upon the computation of damages arrived at by the jury in the civil action.

19. In the civil action the question of comparative negligence was submitted by the court for determination by the jury, but there is no way of telling whether or not the jury found libellant contributorily negligent and, if so, in what proportion the total damages were diminished.

20. If the damages were diminished by the jury in comparing the negligence of the parties, the cost of maintenance at the rate of $1 per day included in the libellant's earnings of $161.37 for that month may also have been proportionately diminished.

21. From the time of the injury until September 18, 1946, libellant received the sum of $1,400 from respondent. In the civil action the jury was instructed to deduct that amount from the damages to which they found libellant was entitled.

22. Libellant withdrew his claim for maintenance and cure at Civil Action No. 6222.

23. It was agreed between the parties that the allowance for maintenance and cure should be at the rate of $3.50 per day.

## Discussion

From the foregoing findings of fact it is evident that libellant's recovery of $16,400 in Civil Action No. 6222 compensated him, inter alia, for his loss of earning power. In that trial he introduced into evidence his earnings for the month of September, 1945, in the amount of $161.37, which amount included $1 per day paid to the libellant by the respondent for board and

2. Civil Action No. 6222 was a suit brought under the Jones Act, 46 U.S.C.A. § 688, and general maritime law, for negligence, unseaworthiness of the vessel, and maintenance and cure. The count for maintenance and cure was withdrawn at the trial before the late Judge Gibson of this court.

3. The American Mortality Tables were admitted in evidence at the trial of the civil action, indicating that the life expectancy of libellant at the time of the trial was 33.92 years.

lodging. In so doing, the libellant submitted the value of his board and lodging, as agreed in his contract of employment. to the jury for its consideration and to aid it in determining his loss of earning power in that case. Therefore, it is the opinion of the court that to the extent of $1 per day he should not recover for maintenance and cure in this action. To hold otherwise may enable the libellant to recover this value of maintenance twice, and duplication of damages is to be avoided. McCarthy v. American Eastern Corp., 3 Cir., 1949, 175 F.2d 727. We are aware of the fact that the jury may have diminished the total damages by an amount representing the degree of contributory negligence which they attributed to the libellant and consequently libellant may not have recovered the entire dollar. The complexities which arise from this situation, we think, have been analyzed and decided properly by Judge Kirkpatrick in Lazarowitz v. American Export Lines, Inc., D.C.E.D.Pa.1949, 87 F.Supp. 197, 198. In that case the learned Judge stated:

"* * * If he [libellant] insists on having the jury consider the value of board and lodging as part of his lost earnings or as bearing on loss of earning power, he runs the risk of having it reduced by the factor of contributory negligence—a factor which would not affect it if it was claimed in the form of cure and maintenance. If he wishes to preserve his right to cure and maintenance intact and undiminished, he can do so by refraining from asking that the jury consider board and lodging in his damage suit.

"* * * Keeping the item of board and lodging from the jury's consideration in the damage suit may, of course, affect the amount of the damages but, as a practical matter, in view of the fact that the libellant is sure to get his cure and maintenance in full, it will not likely result in very much of a net loss."

Since it has been stipulated that the value of maintenance is $3.50 per day, a dollar a day will be deducted from this stipulated value and the sum of $2.50 per day will be awarded to libellant from the date of the accident to September 18, 1946, less the period of his hospitalization.

## Conclusions of Law

1. This court has jurisdiction under 28 U.S.C.A. § 1333.

2. Libellant is entitled to $2.50 per day for maintenance and cure for a reasonable period from the date of the injury until the date of maximum recovery therefrom—September 18, 1946—which is 351 days less the period he was hospitalized at no expense to himself—121 days—or a total of 230 days.

3. The respondent cannot apply the $1,400 paid to libellant to the recovery in this action for maintenance and cure since that amount was presumably deducted by the jury from the total damages it awarded to libellant in Civil Action No. 6222 according to the instructions of the court.

4. Libellant is entitled to the sum of $575 for maintenance and cure.

5. Judgment should be entered in favor of libellant and against the respondent in the sum of $575.